## LITTLE et al. v. GORMAN et al.

No. 2067.  Decided January 19, 1911.  On Application for Rehearing March 28, 1911 (114 Pac. 321).

1. APPEAL AND ERROR—INSUFFICIENCY OF EVIDENCE—REVIEW—OBJEC- TIONS—SPECIFICATIONS. Comp. Laws 1907, section 3284, providing that the objection to the insufficiency of the evidence to sustain the finding must specify the particulars in which it is insufficient, does not require, in view of changes in the procedure by subsequent legislation, that a bill of exceptions which contains all the evidence and the proceedings shall also contain a specification of the particulars in which the evidence is insufficient to sustain the finding complained of, but where the bill purports only to be an abridgment of all the evidence and con-, tains a statement that the substance of the evidence is embodied, a specification of particulars is useful where an exception re· lates to the insufficiency of the evidence. (Page 68.)

2. APPEAL AND ERROR—INSUFFICIENCY OF EVIDENCE—REVIEW—OB-
JECTIONS—SPECIFICATIONS. The requirement of Comp. Laws 1907,
section 3284, that the specification of the particulars in which
the evidence is insufficient shall be made in the bill of excep-
tions is not jurisdictional, and where the assignment of error
complaining of the insufficiency of the evidence specifies the
particulars so as to enable respondent to prepare his brief and
to collect the evidence showing its force and effect as applied to
the questions in issue, respondent may not complain. (Page
70.)

3. APPEAL AND ERROR—FINDINGS—EVIDENCE—REVIEW. The court,
in considering the sufficiency of the evidence to support the find-
ings, will take the part of the evidence which most strongly
bears for the successful party. (Page 72.)

4. BROKERS—EMPLOYMENT—PERFORMANCE OF CONTRACT—EVIDENCE.
Evidence *held* not to support a finding that a contract employing
a broker to procure a purchaser on specified terms was modified,
so that the broker, failing to procure a purchaser ready, will-
ing, and able to purchase on the original terms, could not recover
commissions. (Page 75.)

5. BROKERS—EMPLOYMENT—PERFORMANCE OF CONTRACT—EVIDENCE.
Where a husband employed a broker to procure a purchaser
of his wife's land on specified terms, and the broker procured
a purchaser who offered to buy on modified terms, and the
broker and purchaser knew that the husband when he accepted
the modified terms had no authority to bind the wife, so that
the proposed contract would not be binding, unless accepted by
the wife, and the wife refused to accept the modified terms,
the broker could not recover commissions. (Page 75.)

ON APPLICATION FOR REHEARING.

6. BROKERS—ACTION FOR COMMISSIONS—COMPLAINT. A complaint
by a broker for commissions for procuring a purchaser of real
estate, which proceeds on the theory that the owner placed the
property in the hands of the broker for sale on specified terms,
that subsequently the terms were modified, that the broker
produced a purchaser able and willing to buy on the modified
terms, and that the owner wrongfully refused to convey, is
not predicated on any theory that the owner deceived or de-
frauded the broker. (Page 79.)

APPEAL from District Court, Third District; *Hon. Geo.
G. Armstrong,* Judge.

Action by F. W. Little and another, copartners, doing business under the firm name of Little & Little, against Mary A. Gorman and another.

Judgment for plaintiffs against defendant Patrick W. Gorman. He appeals.

REVERSED AND REMANDED.

*F. B. Scott* and *E. A. Walton* for appellant.

*Van Cott, Allison & Riter* for respondents.

STRAUP, J.

The plaintiffs brought this action to recover a commission for an alleged sale of real estate. They, at the trial, dismissed as to the defendant Mary A. Gorman. The court found the issues in favor of the plaintiffs and against the defendant Patrick W. Gorman, and entered a judgment against him in the sum of three hundred and sixty-two dollars. From that judgment, the defendant Patrick W. Gorman has prosecuted this appeal. He assails the findings on the ground of insufficiency of the evidence to support them.

The respondent urges that such a question cannot be reviewed, because the appellant did not, in the bill of exceptions, specify the particulars in which the evidence is claimed to be insufficient. The bill, as certified to by the trial court, contains all the evidence, all objections made, exceptions taken, and all the proceedings had on the trial and after judgment, and contains a full and complete certified transcript of the official stenographer's notes of all the evidence and all the proceedings. The bill does not contain a specification of particulars. Such a specification was made in the assignment of errors.

We have a statute (Comp. Laws 1907, section 3284) which reads: "No particular form of exception is required, but when the exception is to the verdict or decision, upon the

ground of insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient. The objection must be stated, with as much of the evidence or other matter as is necessary to explain it. The stenographer's notes of the evidence may be stated. Documents on file in the action or proceeding may be copied, or the substance thereof stated, or a reference thereto sufficient to identify them may be made."

By reason of this statute it is contended that a specification of particulars was required to be set forth in the bill itself. When that statute was passed, it was also provided that an appeal could be taken to the Supreme Court, not only from a final judgment of the district court, but also from an order of the district court granting or refusing a new trial. The rule then obtained that the question of whether the evidence was sufficient to justify the verdict or findings could be presented only on a motion for a new trial, and could be reviewed only on an appeal from the order granting or refusing a new trial, or on an appeal from the judgment taken within sixty days after the rendition of the judgment. If an appeal from the judgment was not taken within such time, and if no motion was made for a new trial, the findings or verdict was conclusive as to the facts. Of course, a ruling on a motion for nonsuit, or to direct a verdict, was reviewable on an appeal from the judgment, without a motion for a new trial; such alleged errors being errors in law, and not errors on the facts. The statute then also provided that a party moving for a new trial was required to designate the grounds upon which the motion was made, and also to state whether the motion was based upon affidavits, or minutes of the court, or a bill of exceptions, or a statement of the case. The affidavits, of course, related only to such portions of the motion as were based upon grounds of irregularity of the proceedings of the court or jury, misconduct of the jury, accident or surprise, and newly discovered evidence. When the motion was based on a bill of exceptions or a statement of the case, the bill or statement was required to be served and settled before the motion was heard; and, if a

new trial was sought on the ground of insufficiency of the evidence to justify the verdict or findings, the particulars wherein the evidence was claimed to be insufficient were required to be specified in the bill or in the statement. In case of an appeal from an order granting or refusing the motion, such bill or statement became the record on appeal. When the motion was made on the minutes of the court, and the ground was insufficiency of the evidence, the party moving for a new trial was required to specify in his notice of motion the particulars in which the evidence was claimed to be insufficient. In case of a subsequent appeal from the order granting or refusing the motion, the party appealing was required to prepare and serve, and have settled, a statement of the case; but the statement could only contain the grounds presented and argued before the court on the motion for a new trial, and so much of the evidence and other matters as was necessary to explain them. The court in the settlement was required to exclude from the statement all other evidence or matter. In such case the notice of motion showing the grounds of the motion, and, if on sufficiency of the evidence, the particulars in which the evidence was alleged to be insufficient, was embodied in the statement. No other or different particulars were required to be stated; and only such alleged grounds and error as were presented to the trial court on the motion could be reviewed by the appellate court on the appeal from the order granting or refusing the motion. On an appeal from the judgment alone, the ruling granting or refusing a motion for a new trial was not reviewable, for it was expressly provided that on such an appeal a decision or order from which an appeal could have been taken was not reviewable. All other rulings and orders excepted to were, of course, reviewable on an appeal from the judgment. (Comp. Laws 1888, vol. 2, tit. 8, cc. 7, 8; title 12, c. 1.) Under such a system or procedure the object requiring a specification of particulars in the bill or statement is apparent. It was to advise the party against whom the motion for a new trial was made of the particulars, so that he might take note

whether the evidence proposed by the bill or statement contained all the evidence bearing upon the material issues; and also to advise the trial court in ruling on the motion.

This system or procedure has been materially changed by subsequent legislation. An appeal now lies only from a final judgment, and not from an order granting or overruling a motion for a new trial. The ruling granting or refusing a motion for a new trial may, however, be reviewed on an appeal from the judgment, if properly preserved and presented by a bill of exceptions. A motion for a new trial now may be made upon affidavits as heretofore, and upon the minutes of the court; but not upon a bill of exceptions, or a statement of the case. If the grounds of the motion are based upon insufficiency of the evidence to justify the verdict or findings, a specification of particulars wherein it is claimed the evidence is insufficient is no longer required. In such particular it is sufficient to state in the notice of motion, in the mere language of the statute, "insufficiency of the evidence to justify the verdict or other decision." Now, under the statute, findings of the court, including the question of insufficiency of evidence to sustain them, both in law and in equity cases, may be reviewed on an appeal from the final judgment, without a motion for a new trial. A bill of exceptions now no longer serves any purpose to advise the trial court in passing on a motion for a new trial. It generally is prepared, served, and settled after the motion for a new trial has been overruled, if such a motion was made. When presented for settlement, the case is beyond the reach of the trial court with respect to its power of reviewing its own rulings and of correcting errors. Now the entire transcript of the official stenographer's notes showing all the evidence adduced, the objections and rulings made, the exceptions taken, and the proceeding had may be, and generally is, served and settled and allowed as and for the bill of exceptions, to which may be added whatever proceedings may have been had subsequent to the trial and judgment, and which may be desired to be presented and reviewed. Such bill so settled, together with the

judgment roll, consisting of the pleadings, the verdict, or findings, the judgment, instructions requested or given, and all orders and proceedings deemed excepted to without a bill of exceptions, constitute the record on appeal. Upon that record the appellant, by a rule of this court, is required within five days after the filing of the transcript on appeal to serve and file an assignment of errors. If an assignment is made relating to insufficiency of the evidence to sustain the verdict or the findings, the appellant is required to specify in the assignment the particulars wherein it is claimed the evidence is insufficient.

It is thus seen that the object of a specification of particulars in the bill has to a large extent become obsolete. But we think that such a specification in the bill, in cases where the proposed bill does not contain a complete transcript of the stenographer's notes of all the evidence, still subserves a useful purpose. It no longer can serve any purpose so far as advising the trial court, in itself reviewing its own rulings and correcting errors, for, as already observed, the case, when the bill is presented for settlement, is, for all such purposes, generally beyond the reach of the trial court. When the proposed bill does not contain a complete transcript of the stenographer's notes of all the evidence, but purports to be only an abridgment of all the evidence or a narration of a substance of all of it, and contains a statement that the substance of all the evidence is embodied in the bill, we can well see that a specification of particulars in the bill is still useful when an exception relating to insufficiency of the evidence to support the verdict or findings is attempted to be illustrated or explained by the proposed bill. If, in such a case, a specification is not contained in the bill, the party upon whom the proposed bill is served may not be able to determine as readily whether the bill contains the substance of all the evidence, as it purports, as he otherwise might if the bill contained such specification. That is, if the bill, purporting to contain the substance of all the evidence, contains a specification of particulars, such specification might directly call attention of the party upon whom the proposed

bill is served to some particular evidence not contained in the bill and relating to the exception of insufficiency of the evidence, and thus enable him to propose amendments embodying such omitted evidence, which, except for such specification, might escape his attention. But where, as here, the proposed bill contains a complete certified transcript of the official stenographer's notes of all the evidence and of all the proceedings, and is allowed and settled as and for the bill of exceptions, we cannot see of what benefit the specification in the bill would have been either to the trial court or to the respondents. It was served and presented for settlement after the motion for a new trial was overruled, and the cause beyond the reach of the trial court to review its rulings or correct errors. Of necessity the contents and settlement of the bill would have been the same, whether it contained a specification of particulars or not. Nothing could have been added to it by way of evidence, had the bill contained such a specification.

Conceding, as is urged by respondent's that the statute nevertheless requires such a specification to be made in the bill, still we cannot see wherein they were in any manner prejudiced because such specification was not made in the bill, but was made in the assignment of errors. The requirement certainly is not jurisdictional. When the record came here on appeal and an assignment of errors made relating to insufficiency of the evidence to justify the findings, the respondents, of course, were entitled to a specification of particulars in the assignment to advise them in making proposed amendments to the printed abstract, to enable them to properly prepare their brief, and to afford them an opportunity for preparation in collating the evidence, showing its force and effect as applied to the questions in issue. The specification in the assignment was sufficient for such purposes. No complaint in such particular is made. We think the findings may be reviewed by us.

The court found that on the 7th day of December, 1906, the appellant, in writing, gave the respondents exclusive authority to sell for him certain described real estate for the

sum of twelve thousand dollars cash, "and in the event of
a sale at any price agreed upon I agree to pay you the
regular commission which is five per cent. on amounts up to
two thousand dollars and two and one-half per cent on any
amount in excess thereof. This order good for six months
and thereafter until terminated by ten days' written notice."
The court further found that on the 26th day of January,
1907, the respondents and the appellant "modified the afore-
said contract by providing that, if a purchaser for said prop-
erty could be found, he could pay the purchase price of
twelve thousand dollars by paying one thousand dollars at
the time of sale, two thousand dollars in ten days thereafter,
three thousand dollars in thirty days from the date of the
second payment, and the balance of six thousand dollars on
or before three years from the date of the sale, the last
installment to draw interest at the rate of six and one-half
per cent per annum and to be secured by a mortgage on the
premises." The court further found that on January 26,
1907, the respondents "found a purchaser for said property,
Emil B. Isgreen, who was ready, willing and able to buy
said property for the sum of twelve thousand dollars, and to
make the payments thereof in accordance with the terms
last above mentioned, and that the plaintiffs informed the
defendant Patrick Gorman on the same day that they had
found such a purchaser who was ready, willing, and able
to buy the said property on the terms last above mentioned,
and introduced him to said defendant; that when the plain-
tiff presented to the defendant the aforesaid purchaser, and
informed him that the latter was ready, willing, and able to
buy the property on the terms as above set forth, the said
defendant for the first time notified and advised the plaintiffs
that he was not the owner of the property, but that the title
thereto stood in the name of his wife, and that he was unable
to get her to execute a deed of conveyance to said premises
on the terms above mentioned," by reason of which the sale
of the property was not consummated.

These findings are assailed on the ground of insufficiency
of the evidence to show a modification, as found by the court,

of the so-called written contract. In considering the evidence we take that portion of it which most strongly bears for the respondents. But two witnesses testified in their behalf; one of them being one of the respondents, and the other the prospective purchaser. The former testified that after the written contract was made, authorizing him to sell the property for twelve thousand dollars cash, he showed the property to Isgreen, the prospective purchaser, on the 22d or 23d day of January, 1907, and told him that the price was twelve thousand dollars. He again visited the property with him two or three days after the first visit, when they saw and met the appellant. He further testified that "a few days before this I had been trying to get terms from Gorman," and on January 24, 1907, Gorman agreed to take six thousand dollars cash, and six thousand dollars on time at six per cent interest. This information was made known to Isgreen at that time. On the next day the witness told Gorman that he had submitted such terms to Isgreen, whereupon Gorman "said that he did not say he would agree to those terms." Thereafter, and on the 25th day of January, the witness called at Gorman's house. "I told him I came down to agree about the interest and to verify the rents he claimed he was getting for the house. We talked a long time and finally agreed to compromise the interest at six and one-half per cent instead of seven per cent on half the money. Dr. Isgreen had not said at that time he would buy. Next day I told Dr. Isgreen about the rents, and took him down on the 26th and verified the rents with him. We went at eleven o'clock. Neither defendant was present. As we were going out, I met Mr. Gorman, and we made an engagement to meet him in my office at five thirty o'clock that day."

The witness further testified that up to this time all that had been agreed upon or talked about with respect to a modification of the contract was that six thousand dollars should be paid in cash, and six thousand dollars on time at six and one-half per cent interest. At five thirty o'clock on the 26th, the witness Gorman and Isgreen met in the witness'

office. "Mr. Gorman, the doctor, and myself talked awhile, and they agreed—I think he made the proposition that he would pay one thousand dollars down to bind the bargain, and in ten days two thousand more, three thousand dollars in thirty days, balance on or before three years at six and one-half per cent interest. After he came to that conclusion and agreement, the doctor said, 'I will take it,' and wrote out a check," payable to Mary A. Gorman, the wife of the appellant. "I asked for the full name in which the property stood, and Mr. Gorman said, 'You know this property is my wife's.' Then I said, 'I will make it out for both of you to sign.' That was the first time he mentioned that the property was his wife's. . . . I started to write the contract out, and Mr. Gorman said, 'I better go down to see Mrs. Gorman first.' I said we would all go together and get her to sign, but he said, 'No;' she might have company. I said it did not make any difference; we would all go together; but just as I finished the contract he rushed out of the office. I finished the contract and we started down, and met Mr. Gorman coming back. He said, 'She won't sign.' Dr. Isgreen was with me, and I had the check. I said, 'Let's go down and talk it over with her.' He said we could not see her. I insisted, but he refused; so, we went back. I went down to see her Monday." He further testified that he had no agreement with Mrs. Gorman, and that the final terms which he was about to write down in the contract for Mr. Gorman to sign varied in some particulars from any arrangement or any agreement that had theretofore been made with Gorman; that Gorman had orally agreed to the terms about to be reduced to writing, and "then when we started to reduce them to writing he said, 'You know this is in my wife's name,' and I put her name in the contract." "Q. Wasn't that practically one conversation? A. Well, you might call it one conversation, of course—was practically one conversation; the agreement was made, then it was reduced to writing, then he told me it was in his wife's name. Q. As soon as you attempted to put it in writing? A. Yes. Q. You talked over some terms; then you started

to reduce that to writing? A. Yes; talked over the terms.
Q. As soon as you started to reduce it to writing he informed you of the interest, and to have his wife as a party
to that contract? A. Yes."

Dr. Isgreen, the prospective purchaser, testified with respect to the meeting in respondents' office at five-thirty on
the 26th, that it was agreed that "I was to pay one thousand
dollars down, two thousand within ten days, and three thousand dollars within thirty days after the second payment,
and the balance" in three years at six per cent interest. "I
told Mr. Gorman that I would buy the property on those
terms. I do not know just what he said. I began to write
a check then for one thousand dollars. I drew the check to
Mary A. Gorman. Mr. Little started to write the contract.
Mr. Gorman said the property was in his wife's name. I
handed the check to Mr. Little. While Mr. Little was writing the contract, Mr. Gorman said he would have to go down
and see his wife about it. Mr. Little said we would all go
down together. Mr. Gorman said he would rather go alone.
Mr. Gorman went out. We waited awhile, and Mr. Little
and I walked toward Mr. Gorman's residence, and we met
Mr. Gorman coming from his house. He then said Mrs.
Gorman would not sell."

The facts as found by the court are upon the theory that:
(1) The so-called written contract was modified with regard
to the payments, in the particulars as found; (2) that the
respondents then produced a purchaser who was ready, willing, and able to buy the property upon such terms, and introduced him to the appellant; and (3) that the appellant
then informed the respondents that he was unable to give a
conveyance of the property; the title being in the name of
his wife, who was not willing to execute a conveyance upon
such terms. The evidence, however, shows that the prospective purchaser met, and was introduced to, the appellant before the claimed modification of the contract; that the respondents and the purchaser then endeavored to get a modification of the contract; and that the three finally met in
the respondents' office for the purpose of ascertaining whether

Gorman and the prospective purchaser could get together on terms of sale other and different from those contained in the written contract, or those theretofore submitted. It is manifest that it was the intention of the parties that whatever terms were agreed upon were to be reduced to writing; that whatever was talked over by them, and orally agreed between them, was not regarded by them as the contract, but that the writing when signed was intended to be the completed contract. The conversations of the parties, and the oral proposal and acceptance of propositions, were not intended, nor regarded, by them as constituting a contract, but were intended as mere preliminaries to the entering into and the making of a written contract which when signed was to be the completed contract. At the same time the final proposition of terms was orally made to, and so accepted by, Gorman, and as a part of the same conversation and of the same transaction—almost in the same breath—he also stated that the property was in his wife's name, and, in effect, that she would have to be consulted before finally entering into an agreement upon the terms proposed and accepted, and thereupon her name as a party to the proposed written agreement was inserted and attempts made to obtain her consent. She declined to accept such terms, and refused to sign the contract. The contract was not signed by Gorman, nor, so far as made to appear, was he asked to sign it. The respondents and the prospective purchaser therefore knew when the final terms of sale were so orally proposed to, and accepted by, Gorman that the consent of Gorman's wife was necessary to make an agreement to that effect. Upon such terms, and none other, was the prospective purchaser willing to buy the property. Gorman's want of authority to bind his wife to such terms was disclosed at the time the terms of the proposed contract were orally proposed and so accepted by him, and before any contract in law modifying the original contract was entered into. We think the evidence clearly shows that there was no modification of the contract as found by the court. All that is shown by the evidence is that the respondents and the prospective pur-

chaser endeavored to obtain a modification upon terms as proposed by the purchaser, and as found by the court, but failed.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial. Costs to appellant.

FRICK, C. J., and McCARTY, J., concur.

### ON APPLICATION FOR REHEARING.

STRAUP, J.

Counsel for respondents on petition for rehearing erroneously assert that we held that respondents are not entitled to recover because no binding written contract was made between Mrs. Gorman, who held the title to the property, and Isgreen, the alleged produced purchaser. On such assumption they then build an argument and cite cases to the effect that a real estate broker or agent is entitled to a commission if he produce a purchaser who is willing and able "to buy on the terms imposed by the owner," though no binding written contract was made between the owner and the purchaser, or even though the owner refused to sell, or because of his fault or inability he was unable to convey. We made no such ruling, and hence the argument and the cited cases are not pertinent.

We did not hold that to entitle a real estate broker or agent to a commission it is essential to show that a binding contract was entered into between the seller and the purchaser, or a sale consummated between them. Here is what we held, and what we still hold: The respondents are not entitled to recover because, as shown by the evidence, they failed to produce a purchaser who was willing to purchase the property on the terms proposed and submitted to the respondents by the appellant. The written terms, as originally proposed and submitted on the 7th day of December, gave the respondents authority to sell the property for twelve thousand dollars cash, and further gave them the right to a commission "in the event of a sale at any price agreed upon."

It is not claimed nor pretended that the respondents produced a purchaser who was willing to buy the property on such terms, nor did the respondents in their complaint declare on a breach of that contract. They alleged that the contract, on the 26th day of January, was modified "by providing that a purchaser, if one was found, could buy the property by paying one thousand dollars at the time of the sale, two thousand dollars in ten days, three thousand dollars in thirty days, and six thousand dollars on or before three years," and declared on an alleged breach arising on the contract as modified. That is, they alleged that they produced a purchaser who was ready, able, and willing to buy the property on the terms as so modified, and that the defendants refused to convey the property on such terms. The appellant denied the alleged modification of the contract. The court found that the contract was modified as alleged by respondents. We held that the evidence was not sufficient to support such a finding, and on that ground reversed the judgment and remanded the cause. Of course, counsel contend that we erred in so holding, but that was the question presented, argued, submitted, and decided.

However, let us look at it again. After the written contract was made, the respondents showed the property to Isgreen, the proposed purchaser. He visited the property with one of them several times, the last time at about noon on the 26th of January. Prior to the 26th the respondents had endeavored to obtain terms from the appellant different from those contained in the written contract. Negotiations were had back and forth, but nothing was agreed upon or talked about, as testified to by one of the respondents himself, except that six thousand dollars was to be paid in cash and six thousand dollars on time at six and one-half per cent. When Isgreen and one of the respondents visited the property on the 26th, Isgreen had not yet stated, or indicated, that he was willing to buy the property even upon those terms. As they were leaving the premises on that day, they met Gorman. So, up to this time no agreement of modification of the contract, as alleged in the complaint and as found

by the court, had been reached, and no willingness to buy expressed or indicated by Isgreen. An engagement of the three was then made for a meeting on that day at 5:30 p. m. in respondents' office, for the purpose of ascertaining whether the parties could get together. At the appointed time the three met. After talking back and forth for some time, Isgreen finally proposed that he would pay one thousand dollars in cash, two thousand dollars in ten days, three thousand dollars in thirty days, and six thousand dollars, with interest at six and one-half per cent, on or before three years. The respondent testified that Gorman then said "he would be glad to sell, glad to agree to it. Apparently he agreed. I then started to make out the contract. I asked for the full name in which the property stood. Gorman said, 'You know this property is my wife's.' Then I said, 'I will make it out for both of you to sign.' I started to write the contract out, and Gorman said, 'I better go down and see Mrs. Gorman first.' I said we would all go down together and get her to sign; he said, 'No,' and rushed out of the office just as I finished the contract. I finished writing the contract," and then he and Isgreen also left the office and were on their way to see Mrs. Gorman when they met Gorman on his return, who stated, "She won't sign." The respondent, who had in his possession the check which Isgreen had made out for one thousand dollars, payable to Mrs. Gorman, and who was acting for and representing Gorman, his principal, alone, not Isgreen, insisted, against the statement and direction of his principal, that they all go and see and talk with Mrs. Gorman. Notwithstanding his principal's refusal, the respondent nevertheless thereafter visited Mrs. Gorman. He failed to obtain her signature to the contract, and there the negotiations ended.

Now we are told by counsel that in the conversation referred to in respondents' office, Isgreen's proposal of the terms mentioned, and the statements made by Gorman, constituted not only a meeting of the minds, but an agreement to modify the original contract in terms as alleged and as found by the court. If we could do what counsel do, look only to a few

of the statements, or only a part of the extended conversation and transaction there had, we might be able to agree with them. . But when the whole conversation and transaction is looked at and considered, we think it is clearly made to appear that at the time of Gorman's statements of acceptance of the proposals he also stated that the property was in his wife's name, and, in effect, that she would have to be consulted and her consent obtained. The case is not unlike one where A. accepted proposed terms of B. provided C. also agreed to them. If C. does not agree there is no acceptance, and hence no contract.

Counsel, however, say that Gorman did not notify respondents that the title to the property was in his wife's name until at the meeting of the 26th, and that he thereby deceived, and practiced a fraud upon, them. Just how they were deceived or defrauded is not made to appear. The respondent testified that when the written terms of sale were originally submitted nothing was said or stated as to who owned the property. Nor did the appellant at any other time make any statement or representation that he owned the property, except as may be inferred from the fact that he, by the writing signed by him alone, gave the respondents authority to sell the property. Had respondents produced a purchaser who was able and willing to buy the property on such terms, and Gorman, because he was not the owner, could not convey, or otherwise had not the ability to cause a proper conveyance to be made of, a good and sufficient title, it may be that he would have been liable to respondents for a commission. But for aught that appears, he had the authority and consent of his wife to sell the property upon the terms as originally submitted. He did not have the authority to sell the property on the terms proposed by Isgreen, and so, in effect, stated at the time of the proposal of such terms. Furthermore, the case is not predicated on any theory that the appellant deceived or defrauded respondents. There is no hint of any such allegations in the complaint. The complaint proceeds on the theory alone that the defendants placed the property in the hands of the respondents to be

sold, and that they were authorized to sell it for twelve thousand dollars cash; that subsequently such terms were modified in the particulars referred to, and as found by the court; that respondents produced a purchaser who was able and willing to buy the property on such terms as modified; and that the defendants wrongfully and capriciously refused to convey it.

The petition for a rehearing has little to recommend it but the name of the learned counsel who signed the certificate, and therefore should be denied.    It is so ordered.

FRICK, C. J., and McCARTY, J., concur.